United States v. Greebel next. Thank you very much, Councillors. Appreciate it. Thank you, Mr. Shapiro. You may begin. Good afternoon, Your Honor, or good morning, Your Honor. May it please the Court, Akiva Shapiro from Holtzman Vogel. For the appellant with me is my co-counsel, Mark Aaron Takagaki from Gibson-Dyne. All parties here agree that the stipulated settlement was a fair and reasonable arm's-length agreement reached by sophisticated parties. It was supported by the government, by the victim, by the defendant, and by the garnishers. Mr. Shapiro, is it your position that once the government stipulated to a writ and proposed it to the district court, the court was required to issue exactly that writ? The district court had the very limited supervisory authority that district courts always have over settlement agreements, which is to ensure, to quote in Reyes-Felmy-Tomo, which the government agrees with and quotes itself, that it was the result of good-faith bargaining at arm's length by counsel and that there was no evidence of collusion. That is clearly the case here. Go ahead. No, please. You think if it clearly violated the MVRA, the district court would have no role or constitutional violation of some kind? No role? Certainly, if there was a constitutional violation. Again, it's the limited supervisory right. But this is an arm's-length agreement that the parties clearly and explicitly... How about a statutory violation? Well, if there's a violation of statute, but the parties are allowed to settle their affairs in a way that departs from the way that it would be arranged under the statute. So, for example, there's all kinds of litigation risk which the government and my client concede that perhaps if we'd gone forward, my client would be able to, and this is our position, my client would be able to have all of the taxes withheld. The government says no. So the government wanted to eliminate that litigation risk and settle. From my client's perspective, it's the opposite. So this is a salutary resolution of a long and bitter and deeply disputed set of issues, and it would be a terrible consequence if the result here or if the parties thought that district courts could overturn their settlement agreements, especially in the garnish and restitution context, on the basis of what really was on the basis of a legal error, which is a misunderstanding of the mandate rule. That's really the key or a key point here, which is the sole basis that the district court rejected the settlement here, and this, again, the government agrees with on page 19 of his opposition brief, was its misunderstanding of the mandate rule. The government says, we agree, the mandate rule does not prevent the parties from resolving the dispute on mutually agreeable terms. What do we do about 28 U.S.C. 3013? Sure. So I think 3013, number one, it has never been applied by any court anywhere to override a settlement, negotiated settlement, between the parties. They don't cite any case. There is none that we're aware of. Number two, the district court did not invoke 3013. Number three, you have to look at 3013 first through the lens of 28 U.S.C. 3003b2, which in the FDCPA says, This chapter shall not be construed to curtail or limit the right of the United States to collect any restitution arising out of a criminal matter. And even the government says that that provision limits a district court's discretion when the garnishment is sought by the government. Even if you're going to get past all of that, this is a settlement 3013 doesn't apply now. This is the government exercising its essentially prosecutorial discretion and its statutory right to seek payment and to decide how it's going to do that, how it's going to arrange the affairs, how it's going to use its limited resources. It's taking the litigation risk in deciding all of that. Even if you get to 3013, 3013 only is a check on the government. The case law is clear on this, and mainly it's not very well developed, but we cite a series of district court cases from recent years that make clear or that hold that the government provides a defendant with a layer of protection against the government. Well, it's funny because both sides seem to argue that there's a one-way ratchet, right, then both in their favor, right? That is true, but we are right, respectfully, because the government does have significant powers to settle. Well, I would say we're both right in a certain sense. The government has significant powers to resolve and to chase restitution in the way that it sees fit. That's a separation of powers issue. The Court can't generally interfere with that. There is one limited exception, which is 3013, which Congress passed, and the author of that provision of the FDCPA said in the official legislative history that it was there to, and it was called protective orders, it's there if the United States were to attempt to abuse the power under this bill, the courts can steadfastly protect the debtor. That's what every court that has seen the issue. To fashion it appropriately to anticipate all possible abuses. You're saying there could be abuses by others, others in the government? Well, I think that the legislative history speaks to the abuses by the United States. The statutory text also, I think, is supportive of this. The 3013 is titled modification or protective order, and then semicolon supervision of enforcement. From our view and our reading, the better reading of that is that it is the court's supervision of the government's enforcement of its authorities. And if you look at the list of things that it allows the court to do, first of all, it has to be after notice. The district court did not invoke 3013. The government came up with that afterwards. It never suggested 3013 had that power. The district court did not provide notice that it was using this provision, and in our view, it didn't. But in any event, the — I'm hoping to move on to the mandate issue.  Is your view that a party can stipulate to whatever they want, notwithstanding a mandate from this court? They can not stipulate to a provision of law, a legal holding that is — that is adverse or, you know, departs from — parties can't say, well, the Second Circuit had a certain holding, but we are going to decide amongst ourselves that this is the law. That they can't do. And that's what the mandate rule is, and that's what this Court said in Cohen against DHB Industries, that the mandate leaves issues open for the lower court to dispose of the case on grounds not dealt with. That's right. Let me ask the question a different way. Yeah. Is it your position that the writ was being — was consistent with the mandate, or that because it was a product of a settlement and it tasked the district court what it was doing, it was appropriate because it didn't violate any of the things that you said about — Yeah. So both, and I'm very glad you asked that question, because the mandate from this Court actually does encompass the issues — left open the issues and directed the parties and the district court to resolve the issues that were resolved in the settlement. This Court, and this is at page 8290 of our record and at page 68 of the Federal Reporter of this Court's opinion in 2022, it remanded and said the district court did not consider whether, number one, Griebel would be subject to the early withdrawal tax upon Caesar or the funds by the government, or — separate thing — or determine what property interest remains in Griebel's retirement accounts. We remand to the district court to apprise these questions, plural questions, in the first instance. So this Court actually did remand to the district court to determine whether there's any kind of early withdrawal penalty and what property interest remains in Griebel's retirement accounts, and that is the exact issue that's resolved in the settlement agreement. It says here's his retirement accounts. But isn't the operative question in that case what they have present right to access? I mean, why isn't that just simpler? I mean, how is a court, how is the government, how is anybody supposed to know what the assessment is after the fact, like when it's done a year later? So, I mean, number one, obviously, there's the settlement agreement. The part — the government decided whatever — there were certain risks in taking certain positions, and we're just going to settle it now. But even if you're going to reach the merits or you're going to ask that question about what the resolution could or should be on the merits, our position is, and I think the case law strongly supports, that when you look at what the present right is, you have to remove from that whatever tax penalties or taxes, tax consequences come from the immediate liquidation of that account. So my client has, you know, significant 401k accounts built over years. Many people in this state are subject to garnishment of their 401k accounts. And to say that they have to be forced by the government to liquidate the account now, now they have a huge punitive tax event because of that forced liquidation. And then on top of that, they have to pay the taxes out of their own pocket. Why didn't you get any clarity on the tax liability you were facing? Didn't the district court want you to do that? Didn't they ask you to give you a bunch of time to do that? Well, the district court asked the parties to advise it or to determine whether this 10 percent early withdrawal tax would apply. Our position was it would not, and the government refused to provide an answer, even though, even in its briefing here. Didn't they actually get clarity on the tax liability? No. But the government tried, and the IRS wouldn't give it to them, right? Even though they're representing the IRS here in the brief in this case. And as to the broader tax liability, the district court did ask the garnishees what their view of the tax liability would be. And very significantly, Charles Schwab, which is by far the majority of the garnishment, responded that they asked the district court to expressly require that Schwab reserve and deduct withholdings for applicable Federal and State taxes before turning over the remainder of their funds. That's at AC-661 of the record. So Charles Schwab, reading its own plan documents, and it explains it in its relatively detailed letter, understood that the IRS would likely or at least may hold it responsible for all taxes, and therefore asked the court for an order saying let us withhold all the taxes. And under the Frank case from the Fourth Circuit, Frank says that the government's access to funds may be limited by, quote, the terms of Frank's plan documents or by early withdrawal penalties. We're four square with Frank here. We've got plan documents. We know what the plan administrator's view of the tax issue is. They asked the district court to withhold all taxes, and yet the district court essentially overrode them, overrode the plan documents, even reviewed the plan documents with its own legal error and abuse of discretion, and issued a garnishment order that no party asked for that the government thinks is erroneous and doesn't even have a basis for. So let me just ask, let's say that I agree with you that the only basis for the district court's rejection of the settlement was legal error related to the mandate rule. That leaves the question, I think, of whether to reverse or to vacate and remand, which goes back to the original questions regarding what is the scope of the district court's review with respect to the settlement. And since the district court didn't do anything else, if there is anything else, why shouldn't we remand? Sure. I appreciate the question, Judge David. You – there's no need to remand and you shouldn't remand because there are no factual questions here going to the fairness, reasonableness, or arm's-length nature of the settlement. All parties wrote into the court with detailed explanations about the benefits of the settlement. This was a settlement that stretched over, over a year of back and forth significant negotiation between sophisticated parties and counsel. The victim's counsel themselves wrote in and supported the settlement. We explained that it eliminated litigation risk on all sides, that it conserved resources for not having to do future appeals and future litigation, that there was a finality, there was immediate payment to the victim. The irony here is that the victim would have received its 60 percent immediately and now instead we have this future further litigation because the district court refused to enter that. If you're going to remand it back, then it's going to take even longer. There's going to be further litigation, further hearings, and the victim is going to be further delayed in getting the money that all parties, including my client, want to get them now. So I just think there's no factual dispute. No one has pointed to this – the government can't and hasn't pointed to any factual dispute on the basic oversight that the court would have to look at, this court would have to look at, or the district court on the basic oversight of a settlement agreement. It's fair. It's reasonable. It's arm's length. There's no evidence of collusion. And we ask the court to reverse and remand with directions to enter the settlement agreement. Just one quick question. Sure. Going back to the victim's rights. So the February 2025 order referenced the victim's rights in restitution proceedings. Would that be sufficient justification for rejecting the proposed garnishment stipulations? No, Your Honor. Here we have the unusual situation where the victim themselves responded to that order and told the court that they wanted the settlement to be affirmed because they wanted their money now and because they didn't believe it would be appropriate given that garnishment is remedial and that you're balancing, even in the victim's view, you're balancing the ability of the debtor or the tenant to pay against the obligation to pay the restitution, et cetera, that they thought that this was a fair and reasonable and just and correct resolution. And I would also note, it doesn't change the underlying restitution order. This is just about how you distribute these 401K funds. But my client still will owe the full measure of restitution that remains afterwards. I think that also is why the victim supported this. And then one factual question regarding the state tax liability issue.  And you may have gone over this, but I just want to be clear in my own mind. Does the evidence support withholding 9% of the funds to cover state tax liability? Yes, it does, Your Honor. The government and my client evaluated the taxes that would likely occur that he would be subject to because he's liquidating $2 million, over $2 million in a single tax event. So you're bumping up into the highest tax bracket federally and state for the year and felt that that was fair and appropriate. And there's also a fallback in the settlement agreement that if there is any excess, meaning if he overpaid those state taxes, then they would either be applied to federal and if there's a net refund, that has to go to the victim. And the government gets immediate copies of his actual tax returns to review them and make sure that he is both doing what he's committed to doing, that they believe and they understand and they agree that everything was handled appropriately and fairly. Thank you. We'll see from you, we'll hear from you in a bit. Good morning, Your Honors. Good morning. Assistant U.S. Attorney Thomas Price, on behalf of the United States, may please the Court. The government agrees with the appellant's position that the proposed stipulations of garnishment submitted to the District Court in January of 2025 were negotiated in good faith at arm's length and did not violate this Court's mandate or the holding in U.S. v. Australia 47 at 465. Thus, the District Court could have so ordered those stipulations. Beyond that, the government and Mr. Griebel disagree as to whether the District Court had any authority to reject or modify the proposed stipulations and whether it should reach the issue this Court should hold that the only limitation on the government's ability to garnish Mr. Griebel's retirement accounts are those pursuant to the Mandatory Victim Retirement Act. They express mandatory provisions that are in either planned documents or statutes that require withholdings of the specific funds garnished at the time of distribution. Additionally, the government disputes Mr. Griebel's assertion that he raised issues of tax liability and the 10% additional tax under 72T as limitations on what the government could garnish under the MVRA. Instead, those issues were only raised, the issue of future tax liabilities in particular was only raised as an argument that garnishment would be an improper increase in restitution, which courts that have addressed that issue have found that it is not. And to the extent that he raised the additional tax and the underlying litigation, that was done as an argument that it interfered with his unilateral right to withdraw funds and therefore that no garnishment should be allowed. The only limitation on the actual garnishment allowed that Mr. Griebel argued below was the 25% cap under the CCPA, which again, the district court, this court, and other courts who have addressed that issue have found is not applicable to garnishment under the MVRA. So can I ask why you do not read our mandate to be limited to determining tax liability under 72T? The mandate did demand for that consideration by the district court, however, the government and I believe the appellant don't read that as limiting the broader ability of parties to settle their disputes, which this court has recognized and other courts have recognized, even on a remand, that's still available. Additionally, to the extent that... I'm sorry. So you're saying that it didn't preclude it. So I just want to make sure I understand the government's position. In order to have limited it only to 72T under your reading, the panel would have had to say this was the only thing considered? Because I don't think you're disputing that the amount that you are reducing subject to garnishment or at least under the stipulation was a broader set of potential tax liabilities. Yes, Your Honor. Our understanding of the mandate rule is that the court would have understood that on remand the parties could still settle. So we don't believe that the parties doing that would have violated anything that the court intended. I don't believe the court needs to put that in every mandate because it's a general broad principle that I believe this court would agree with. In terms of specifics, the 20% additional tax... or not the additional tax, the 20% under IRC 3405, that would also fall under an exception to the mandate rule because the government believes that imposing that tax would constitute a potential hardship on the third party, the plans, and that would be one exception that's allowed under the mandate rule. It had not been addressed in the underlying matter because Mr. Giebel had not raised the general issue of taxes as a limitation on his... on what the government could garnish. So we believe it was appropriate at the very least to go beyond the mandate to include the 20% mandatory withholding under 3405C so that that did not affect the hardship on the plans who could have been held responsible for paying that 20% if Mr. Giebel was unable to do so. So you read... I mean, you used the word go beyond the mandate. So you read it as you've got to check the boxes, but if it's not affirmatively inconsistent, that's how we should understand the mandate rule? Well, the 20% we believe would fall under one of the enumerated exemptions to the mandate rule and... I thought that was your backup argument and that your first argument was that it doesn't violate the mandate and therefore was appropriate. Yes, Your Honor. Our first argument, and we do believe that the appropriate resolution here is either to affirm the district court's decision or remand with instructions to enter the stipulations as agreed to. We do believe that as this is... this is not a typical situation where you have two parties that are resolving a civil dispute. This is falling under the MVRA. It has to do with a criminal conviction of Mr. Giebel and court-imposed restitution. And therefore, to that extent and within the limits of the FDCPA 3003 and 3013, those previously discussed, we believe that the court does have some limited authority to modify or reject the stipulations. So that would suggest, if we agree with you, that it was error to conclude it violated the mandate rule and that was the only basis for the district court's decision, that would suggest that we would vacate and remand for the district court to engage in that exercise of discretion that the government believes it has? Well, if you were to determine that the decision below wasn't abuse of discretion, we believe that... If I think the district court didn't exercise any discretion, which is essentially your argument, the district court didn't exercise any discretion, it engaged in a legal error vis-à-vis the mandate rule, why wouldn't the decreto language send it back to the district court to engage in the discretion the government thinks it has? Well, again, Your Honor, we believe that any discretion would be limited, and we believe that in this case, because of the general principle that settlements reached at arm's length between sophisticated parties should generally be approved, we think that the appropriate remedy would be to instruct the court to approve the stipulations that the parties entered into. Can you tell me your position on the 10% of the total rather than 10% of the 80%? Yes, Your Honor. So as we read the court's order, she did not, the court did not decide specifically the 10% additional tax issue, but she relied upon language from the mandate that said in the event that the parties do not clarify the issue for the court, it may want to just withhold 10% in order to make sure the money's available if it's decided that that doesn't apply. Following that logic, it should have been 10% of 100%, not 10% of 80%, right? Exactly. So it should have been 10% of the full amount, but it was only 80% that was transferred from the plans to the clerk. And as we read the instruction, it's to withhold 10% of the 80% that went to the clerk, which would be a shortfall of 2%. So we can make that calculation ourselves, or do we have to send it back to the court? I believe that calculation is straightforward, Your Honor, and could be made by the court. And then finally, going back to Section 3013, which relates to the statute's grant of authority to modify a garnishment order, is there a problem in sustaining the district court's discretion on the basis of that statute where the court did not cite to that statute? Well, this court can uphold or affirm the district court's decision on any basis that it finds in law or fact to do so. It doesn't need to necessarily do it on the basis that the court cited. I would just note that 3013 is obviously generally applicable to any situation in which a garnishment may take place, whereas 3003, which places a limit on any action that would limit the government's ability to pursue, and specifically statute refers to restitution, among other things, that does provide some limitation on what 3013 would otherwise allow. Thank you. Thank you. Briefly, Your Honor, I just want to get back to the question of whether the settlement here violated or exceeded the mandate. Our view, our strong view, is that it did not. This court remanded both on the 10 percent issue and to, quote, That is exactly the question and the issue that the parties addressed. Even if this court reads the prior decision not to have remanded for that and only on the 10 percent, still parties are permitted, and we cite multiple circuit court cases, decisions from multiple circuits, including from this one, about this. The parties are still permitted to settle their affairs, and we want parties to settle their affairs after a remand, resolve certain legal issues. We want parties to be able to settle their affairs globally as long as, again, as long as they are not purporting to override the court on the court's remand. The question here, if the court were to reach the merits, the question is what this court said in the 2002 case. What is defendant's property interest in his 401K? The government, even though I think I heard them now taking the position that the 20 percent automatic withholding was not necessarily carved out of the distribution in their letter to the district court, this is at page A's 376 of the record, they go through the whole thing on the 20 percent and then say, as a result, Grebel and thus the United States would not be able to access those funds. So it's a change of position there in their prior position. Help me with something. I know you're running out of time, but, like, I just I need the articulation of why a year-end income tax liability limits his present right to access funds in the account. Certainly. It's because his right to those funds, right, this money sitting in Charles Schwab and Merrill Lynch, his right to those funds upon liquidation is carved, that tax that he owes is carved out. Just like the 10 percent, by the way, tax withholding. No, not at the time, right? It's after the tax assessment occurs, depending on a myriad of other factors as to what his tax liability is. The calculation is later, but the liability, the tax event, the fact that he owes money to the government happens right now when that money is withdrawn. It just happens when the calculation is later. But he can access it, right? He just might have to pay it from different funds. Or he might have to pay, as you pointed out, out of his pocket, right? So how does it limit his access to what he can get from those funds? Because he does not have to. What I think you're actually arguing is that you don't want him to have to pay it out of his pocket. You want him to have to pay it out of those funds. That is 100 percent what we're arguing, and that is because the — that would be a double penalty, essentially, increasing his garnishment by having him forced to liquidate the funds and then incur this punitive tax event. Garnishments are supposed to be remedial. They are not supposed to be punitive. And the cases that we cite — and the government doesn't even touch these cases. Colbert's from the Northern District of Illinois, U.S. v. O'Brien all read the step-into-the-shoes principle this way, and that's the critical principle. The government steps into his shoes and says — Colbert says taxes should be withheld from distributions for any tax liabilities. O'Brien says any resulting tax liability would improperly increase restitution and therefore carves it out. Even in Syed, even though the Seventh Circuit used the language of penalties, it actually affirmed the district court's turnover order in which the district court put aside 30 percent of that money to be used to pay the taxes. And the same thing in Frank. Frank put aside 42 percent of the money to be used for the taxes. I think I understand the argument. Just real quick. In a prior appeal, you didn't argue that all of the tax consequences of liquidation precluded garnishment, right? You just argued that with respect to the 10 percent. No, we did, Your Honor. I mean, the legal issue that was in front of the court then was the CCPA and whether the 25 percent cap on earnings under the CCPA applied to a lump sum distribution under a 401K. But we did say that under the stepping — and argue that under the stepping into your shoes principle, any tax liabilities would have to be carved out. And even my — But carved out. But with respect to the 10 percent, you said it prevented garnishment altogether. You didn't make — Oh, we did argue that that prevented garnishment. Why was that 10 percent different than the other tax liabilities? Because in our view, because that was immediately withdrawn by the garnishee and not even turned over to our clients, that would have prevented the — again, the court overruled that. I'm just wondering if I think what we're getting to is perhaps why there is an interpretation of the Band-Aid being what he had present access to. Right? Like, isn't that where we're landing now? But — but no, Your Honor, because — because, Justice Breyer, because the court specifically remanded for two separate questions, the early withdrawal penalty and what his property interests in the 401K were. That — that was this Court's exact language on remand. And so that's because we had raised the issue that the fact that you have a forced liquidation by the government and therefore a punitive tax event requires under the case law, which we cited then and we cite again now, requires that the restitution be structured, as the parties did, such that a certain part was taken aside to be used for tax — payment of tax liabilities. That was our position then. We raised it. This Court remanded with those two questions sent to the district court. The parties, in a lengthy negotiated settlement, resolved that — those issues, put them before the district court, and the only reason it rejected it was its legal error on the mandate rule. There's no factual disputes here and no reason not — for this Court not to send it back simply to enter the settlement agreement. Okay. Thank you. We will take the case for — under advisement. Thank you very much. Thank you.